<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

---

| | | |
|---|---|---|
| RICHARD G. PHILLIPS, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 05-5969 (SRC) |
| | : | |
| v. | : | **OPINION** |
| | : | |
| JO ANNE B. BARNHART, | : | |
| COMMISSIONER OF SOCIAL | : | |
| SECURITY, | : | |
| | : | |
| Defendant. | : | |

---

<u>**Chesler, District Judge**</u>

This matter comes before the Court on the appeal by Plaintiff, Richard G. Phillips

("Phillips"), of the final decision of the Commissioner of Social Security ("Commissioner")

determining that he is not eligible for Social Security Disability Benefits under the Social

Security Act (the "Act").  This Court exercises jurisdiction pursuant to 42 U.S.C. § 405(g) and,

having considered the submissions of the parties without oral argument, pursuant to L. Civ. R.

9.1(b), finds that the Commissioner's decision is supported by substantial evidence and is hereby

**AFFIRMED**.

**I.  BACKGROUND**

The following facts are undisputed.  Phillips was born in 1963.  He has a high school

education and has worked at different times as a medical billing clerk, warehouse stocker, and

waiter.  On March 31, 2003, he filed an application for Social Security Disability Insurance

Benefits and Supplemental Security Income, alleging disability since September 11, 2001 due to

a seizure disorder, bipolar disorder, depression and curvature of the spine.

Plaintiff's claims were denied by the Commissioner initially and on reconsideration. Pursuant to Plaintiff's request, a hearing was held before Administrative Law Judge Ralph Muehlig (the "ALJ") on July 11, 2005, who denied Plaintiff's claim in an unfavorable decision issued September 21, 2005.  After the Appeals Council denied Plaintiff's request for review of the ALJ's decision, that decision became final as the decision of the Commissioner of Social Security.  On December 27, 2005, Plaintiff filed the instant appeal of the Commissioner's decision.

## II.  DISCUSSION

A.    Standard of Review

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g).  This Court must affirm the Commissioner's decision if it is "supported by substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); Stunkard v. Sec'y of Health and Human Services, 841 F.2d 57, 59 (3d Cir. 1988); Doak v. Heckler, 790 F.2d 26, 28 (3d Cir. 1986).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  Substantial evidence "is more than a mere scintilla of evidence but may be less than a preponderance."  McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004).  The reviewing court must consider the totality of the evidence and then determine whether there is substantial evidence to support the Commissioner's decision.  See Taybron v. Harris, 667 F.2d 412, 413 (3d Cir. 1981).

The reviewing court is not "empowered to weigh the evidence or substitute its

conclusions for those of the fact-finder."  Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir.

1992), cert. denied sub nom. Williams v. Shalala, 507 U.S. 924 (1993) (citing Early v. Heckler,

743 F.2d 1002, 1007 (3d Cir. 1984)).  If the ALJ's findings of fact are supported by substantial

evidence, this Court is bound by those findings, "even if [it] would have decided the factual

inquiry differently."  Fargnoli v. Massanari, 247 F.3d 34, 35 (3d Cir. 2001); see also Hartranft v.

Apfel, 181 F.3d 358, 360 (3d Cir. 1999).

     In determining whether there is substantial evidence to support the Commissioner's

decision, the reviewing court must consider: "(1) the objective medical facts; (2) the diagnoses

and expert opinions of treating and examining physicians on subsidiary questions of fact; (3)

subjective evidence of pain testified to by the claimant and corroborated by family and neighbors;

(4) the claimant's educational background, work history and present age."  Blalock v.

Richardson, 483 F.2d 773, 776 (4th Cir. 1973).  "The presence of evidence in the record that

supports a contrary conclusion does not undermine the Commissioner's decision so long as the

record provides substantial support for that decision."  Sassone v. Comm'r of Soc. Sec., 165 Fed.

Appx. 954, 955 (3d Cir. 2006) (citing Blalock, 483 F.2d at 775).

B.    Standard for Awarding Benefits Under the Act

    The claimant bears the initial burden of establishing his or her disability.  42 U.S.C. §

423(d)(5).  To qualify for DIB or SSI benefits, a claimant must first establish that he is needy and

aged, blind, or "disabled."  42 U.S.C. § 1381.  A claimant is deemed "disabled" under the Act if

he is unable to "engage in substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §

423(d)(1)(A); see also Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987).  Disability is predicated on whether a claimant's impairment is so severe that he "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).  Finally, while subjective complaints of pain are considered, alone, they are not enough to establish disability.  42 U.S.C. § 423(d)(5)(A).  To demonstrate that a disability exists, a claimant must present evidence that his or her affliction "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically accepted clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

C.    The Five-Step Evaluation Process

Determinations of disability are made by the Commissioner, pursuant to the five-step process outlined in 20 C.F.R. § 404.1520.  The claimant bears the burden of proof at steps one through four.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

At the first step of the evaluation process, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity.[1]  20 C.F.R. § 404.1520(b).  If a claimant is found to be engaged in such activity, the claimant is not "disabled" and the disability claim will be denied.  Id.; Yuckert, 482 U.S. at 141.

At step two, the Commissioner must determine whether the claimant is suffering from a severe impairment.  20 C.F.R. §§ 404.1520(a)(ii), (c).  An impairment is severe if it "significantly limits [a claimant's] physical or mental ability to do basic work activities."  Id.  In determining whether the claimant has a severe impairment, the age, education, and work

---

[1] Substantial gainful activity is "work that involves doing significant and productive physical or mental duties; and is done (or intended) for pay or profit."  20 C.F.R. § 404.1510.

experience of the claimant will not be considered.  Id.  If the claimant is found to have a severe impairment, the Commissioner addresses step three of the process.

At step three, the Commissioner compares the medical evidence of the claimant's impairment(s) with the impairments presumed severe enough to preclude any gainful work, listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  See 20 C.F.R. § 404.1594(f)(2).  If a claimant's impairment meets or equals one of the listed impairments, he will be found disabled under the Social Security Act.  If the claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to step four.

In Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 119-20, 120 n.2 (3d Cir. 2000), the Third Circuit found that to deny a claim at step three, the ALJ must specify which listings[2] apply and give reasons why those listings are not met or equaled.  In Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004), however, the Third Circuit noted that "Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis.  Rather, the function of Burnett is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review."  (Id.)  An ALJ satisfies this standard by "clearly evaluating the available medical evidence in the record and then setting forth that evaluation in an opinion, even where the ALJ did not identify or analyze the most relevant listing."  Scatorchia v. Comm'r of Soc. Sec., 137 Fed. Appx. 468, 471 (3d Cir. 2005).

Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform his past relevant work.  20 C.F.R. § 404.1520(e).  If the claimant is able to perform his past relevant work, he will not be found disabled under the Act.  In Burnett, the

---

[2] Hereinafter, "listing" refers to the list of severe impairments as found in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Third Circuit set forth the analysis at step four:

> In step four, the ALJ must determine whether a claimant's residual functional capacity enables her to perform her past relevant work. This step involves three substeps: (1) the ALJ must make specific findings of fact as to the claimant's residual functional capacity; (2) the ALJ must make findings of the physical and mental demands of the claimant's past relevant work; and (3) the ALJ must compare the residual functional capacity to the past relevant work to determine whether claimant has the level of capability needed to perform the past relevant work.

Burnett, 220 F.3d at 120.  If the claimant is unable to resume his past work, and his condition is deemed "severe," yet not listed, the evaluation moves to the final step.

At the fifth step, the burden of production shifts to the Commissioner, who must demonstrate that there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with his medical impairments, age, education, past work experience, and residual functional capacity.  20 C.F.R. §§ 404.1512(g), 404.1560(c)(1).  If the ALJ finds a significant number of jobs that claimant can perform, the claimant will not be found disabled.  Id.

When the claimant has only exertional limitations, the Commissioner may utilize the Medical-Vocational Guidelines found in 20 C.F.R. Part 404, Subpart P, Appendix 2 to meet the burden of establishing the existence of jobs in the national economy.  These guidelines dictate a result of "disabled" or "not disabled" according to combinations of factors (age, education level, work history, and residual functional capacity).  These guidelines reflect the administrative notice taken of the numbers of jobs in the national economy that exist for different combinations of these factors.  20 C.F.R. Part 404, Subpart P, Appendix 2, Paragraph 200.00(b).  When a claimant's vocational factors, as determined in the preceding steps of the evaluation, coincide with a combination listed in Appendix 2, the guideline directs a conclusion as to whether an

individual is disabled.  20 C.F.R. § 404.1569; Heckler v. Campbell, 461 U.S. 458 (1983).  The

claimant may rebut any finding of fact as to a vocational factor.  20 C.F.R. Part 404, Subpart P,

Appendix 2, Paragraph 200.00(b).

Additionally, pursuant to 42 U.S.C. § 423(d)(2)(B), the Commissioner, in the five-step

process, "must analyze the cumulative effect of the claimant's impairments in determining

whether she is capable of performing work and is not disabled."  Plummer v. Apfel, 186 F.3d

422, 428 (3d Cir. 1999).  Moreover, "the combined impact of the impairments will be considered

throughout the disability determination process."  42 U.S.C. § 423(d)(2)(B); 20 C.F.R. § 1523.

However, the burden still remains on the Plaintiff to prove that the impairments in combination

are severe enough to qualify him for benefits.  See Williams v. Barnhart, 87 Fed. Appx. 240, 243

(3d Cir. 2004) (placing responsibility on the claimant to show how a combination-effects analysis

would have resulted in a qualifying disability).

While Burnett involved a decision in which the ALJ's explanation of his step three

determination was so inadequate as to be beyond meaningful judicial review, the Third Circuit

applies its procedural requirements, as well as their interpretation in Jones, to every step of the

decision.  See, e.g., Rivera v. Commissioner, 164 Fed. Appx. 260, 262 (3d Cir. 2006).  Thus, at

every step, "the ALJ's decision must include sufficient evidence and analysis to allow for

meaningful judicial review," but need not "adhere to a particular format."  Id.

D.     Plaintiff's Appeal

Plaintiff contends that the ALJ's decision suffers from a number of legal defects, such as

failing to give the correct weight to the opinions of treating physicians and ignoring other

evidence.  Many of Plaintiff's critiques, however, lack grounding in the two legal structures that

provide the foundation for the disability determination, the burden of proof and the five-step

evaluation process.  Moreover, it is not sufficient to argue simply that the ALJ's decision does not conform to a regulation or ruling, but that the nonconformity was material to the outcome of the five-step process.  Failing to link the critiques to particular steps, and to explain how the error alleged was material, many of Plaintiff's arguments cannot succeed.  Moreover, because the Plaintiff bears the burden of proof at the first four steps of the evaluation process, to succeed in arguing material error at one of those steps, Plaintiff must persuade this Court that the ALJ's determination is not supported by substantial evidence.

Placing Plaintiff's arguments into the framework of the five-step evaluation process, Plaintiff attacks the ALJ's determinations at steps four and five on the following grounds: 1) the step four residual functional capacity ("RFC") determination is not supported by substantial evidence; 2) the ALJ improperly assessed the demands of Plaintiff's past relevant work at step four; and 3) the ALJ improperly relied on the Medical-Vocational Rules at step five.

At the second step, the ALJ found that the Plaintiff suffered from severe impairments.  At the third step, the ALJ determined that Plaintiff's impairments do not meet or equal a listing. Plaintiff does not dispute these determinations.  Rather, to the extent that Plaintiff does focus on an evaluation step, he contends primarily that the ALJ erred in determining residual functional capacity at step four.

Plaintiff contends that the step four RFC determination is legally deficient because the ALJ: 1) did not address whether plaintiff could work for eight hours per day, five days per week; 2) did not perform the function-by-function analysis described in SSR 96-8p; 3) did not consider all of Plaintiff's limitations and impairments; and 4) ignored the medical evidence.

At step four, the ALJ determined that Plaintiff retains the residual functional capacity to perform sedentary work.  First, the ALJ considered Plaintiff's subjective reports of his inability

to work and found them not entirely credible.  (Tr. 19.)  The ALJ observed that Plaintiff testified

at the hearing that he was able to complete school training as a cardiovascular technician on June

9, 2005, and that he was generally able to perform activities of daily living.  (Id.)  The ALJ's

credibility determination is based on substantial evidence.

The ALJ next assessed the evidence relating to Plaintiff's psychiatric impairments.  The

ALJ observed that Plaintiff had not been hospitalized for psychiatric problems, and stated that

while he has commenced psychiatric therapy on numerous occasions, "it has never been a serious

pursuit."  (Id.)  Plaintiff does not dispute the accuracy of this assessment.  The ALJ cited the

mental status assessments of psychologists Dr. Farnese (Tr. 182-184) and Dr. Wood (Tr. 308-

309), and psychiatrist Dr. Greenwald (Tr. 151-154), all of which show no significant mental

impairments.  The ALJ also cited the evaluation of social worker Ms. Barry, who completed an

assessment of the effect of Plaintiff's mental and emotional impairments on Plaintiff's ability to

work.  (Tr. 300-302.)  Ms. Barry rated Plaintiff in fifteen areas of work-related abilities; every

rating was "fair" or higher.  (Id.)  Ms. Barry's narrative assessment is clearly sympathetic to

Plaintiff and yet describes no greater than mild effects of his psychiatric difficulties on his ability

to work.  (Id.)  Significantly, in his brief, Plaintiff describes Ms. Barry as Plaintiff's "counselor"

and argues that her opinion "cannot be ignored even though she is not a physician."  (Pl.'s Br.

20.)  Indeed, Ms. Barry's evaluation alone constitutes substantial evidence that supports the

ALJ's determination that Plaintiff's psychiatric impairments do not significantly limit his

residual functional capacity to work.  Furthermore, additional support is found for this conclusion

in the evaluation of Dr. Ira Gash, who found Plaintiff's psychological problems to be "not

functionally limiting."  (Tr. 228.)

Plaintiff argues that the ALJ failed to properly evaluate the medical evidence, contending

that the ALJ did not give the opinion of treating physician Dr. Greenwald controlling weight, pursuant to 20 C.F.R. § 404.1527(d)(2).  It is correct that the ALJ appeared to give little weight to Dr. Greenwald's report that Plaintiff would be completely disabled from October 8, 2002 through October 8, 2003.  (Tr. 19, 20.)  The ALJ's determination, however, meets the requirements of § 404.1527, since the regulation requires that the opinions of treating physicians be given controlling weight when they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [] not inconsistent with the other substantial evidence in your case record."  20 C.F.R. § 404.1527(d)(2).  Dr. Greenwald's opinion does not appear to meet the requirements of this regulation to receive controlling weight.  Dr. Greenwald completed the evaluation form on October 10, 2002, just two days into the period of projected total disability.  It would not be reasonable to give controlling weight to what is only speculation about what a person's abilities might be in the remote future.  Moreover, the form gives no explanation of any medical evidence that supports Dr. Greenwald's disability conclusion, beyond a statement of diagnosis.  The ALJ's decision not to give Dr. Greenwald's assessment controlling weight is supported by substantial evidence; because Dr. Greenwald's opinion was not well-supported, the ALJ was not required to give it controlling weight.

The ALJ next assessed the evidence relating to Plaintiff's seizure disorder.  (Tr. 20.)  The ALJ observed that, while Dr. McKenna has confirmed that Plaintiff experiences grand mal seizures every two weeks, laboratory tests indicated that blood serum levels of his anticonvulsant medication were in a sub-therapeutic range, indicating non-compliance with treatment.  (Id.)  The record shows that, when asked about this finding, Dr. McKenna did not question it or disagree that this is evidence of "apparent lack of compliance."  (Tr. 212.)  Significantly, Plaintiff points to no evidence that this non-compliance inference is incorrect.  The ALJ's inference that

10

Plaintiff's impairments due to his seizure disorder are caused by non-compliance with treatment is supported by substantial evidence.

Lastly, the ALJ considered the evidence relating to Plaintiff's back and shoulder pain. (Tr. 20.)  Reviewing the record, the ALJ concluded that these conditions were not severe impairments within the meaning of the regulations, implying that they were thus not limiting of functional capacity.  (Id.)  Plaintiff does not dispute this conclusion.

Considering all the evidence, the ALJ concluded that the Plaintiff retains the residual functional capacity to perform the exertional demands of a full range of sedentary work.  This Court finds that the ALJ considered the medical evidence and that his determination is supported by substantial evidence of record.

Plaintiff next objects that the ALJ erred in considering Plaintiff's past relevant work ("PRW") as a medical billing clerk as sedentary work.  This appears at most to be harmless error. SSR 82-62 provides this guidance on the PRW determination:

> The claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level, exertional demands and nonexertional demands of such work. Determination of the claimant's ability to do PRW requires a careful appraisal of (1) the individual's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements; (2) medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of the work; and (3) in some cases, supplementary or corroborative information from other sources such as employers, the Dictionary of Occupational Titles, etc., on the requirements of the work as generally performed in the economy.

The ALJ's decision does not conform to the requirements of SSR 82-62, as it does not show that the ALJ performed a careful appraisal of Plaintiff's statements as to which past work requirements can no longer be met.  This is, however, no more than harmless error, since the ALJ also performed an alternative determination in which he considered that Plaintiff might not be

capable of performing his past relevant work and proceeded to step five, at which he determined that Plaintiff was not disabled.

At step five, the ALJ consulted the Medical-Vocational Rules, pursuant to 20 C.F.R. § 404.1560(c), and determined that jobs that Plaintiff could adjust to existed in significant numbers in the national economy, requiring a finding that Plaintiff is not disabled. (Tr. 21.) Plaintiff contends that the ALJ erred at step five by relying on the Medical-Vocational Rules alone when a claimant has a combination of exertional and non-exertional impairments, contrary to Sykes v. Apfel, 228 F.3d 259, 270 (3d Cir. 2000). This argument fails because it relies on the predicate that Plaintiff has non-exertional impairments, which has not been established. The ALJ did not find any non-exertional impairments. Plaintiff bears the burden of proof of a non-exertional impairment, a burden which Plaintiff did not meet. As discussed above, given the Barry assessment of the effect of Plaintiff's psychiatric conditions on his ability to work, the ALJ's determination that Plaintiff has no non-exertional impairments is supported by substantial evidence. In the absence of a finding of a non-exertional impairment, the ALJ would have had no cause to base the step five determination on a combination of exertional and non-exertional impairments. As such, the ALJ's reliance on the Medical-Vocational Rules at step five is not in error.

Plaintiff makes one point that deserves additional discussion when he contends that "[P]laintiff's failure consistently to seek mental health treatment does not negate the presence of a mental impairment." (Pl.'s Br. 35.) This is true but insufficient to deal effectively with the evidence of Plaintiff's non-compliance with treatment. Plaintiff does not engage the issue of whether the non-compliance with treatment should affect the disability determination. As a whole, the record shows that Plaintiff has not shown good compliance with the treatment

12

recommendations of medical professionals.  The statement just quoted implies that Plaintiff concedes that he has failed consistently to seek mental health treatment.  As discussed above, Plaintiff's treating physician Dr. McKenna did not disagree that it appeared that Plaintiff had not been compliant with the recommendations for treatment of his epilepsy.  Moreover, the record contains numerous references to Plaintiff's significant history of alcohol dependence and abuse. See, e.g., Tr. 142, 150, 153, 309, 314-15, 321.  Mental health professionals have recommended participation in Alcoholics Anonymous on a number of occasions; treating physician Dr. Greenwald made one such recommendation.  (Tr. 154, 313.)  On November 30, 2004, Raritan Bay Mental Health Center closed his case "because of a failure to meet minimal center expectations of not keeping scheduled appointments on a regular basis and a non-response to our outreach attempts."  (Tr. 321.)  Plaintiff admitted to the ALJ that he continues to drink alcohol. (Tr. 19.)  This Court takes judicial notice of the fact that Alcoholics Anonymous "is a program of total abstinence."[3]  FED. R. EVID. 201(b).  In sum, the record presents substantial evidence that Plaintiff has not complied with medical recommendations for treatment of the problems he claims have disabled him.

The Social Security regulations give clear guidance on the impact of treatment non-compliance on the disability determination:

Need to follow prescribed treatment.

(a) What treatment you must follow.  In order to get benefits, you must follow treatment prescribed by your physician if this treatment can restore your ability to work, or, if you are a child, if the treatment can reduce your functional limitations so that they are no longer marked and severe.

(b) When you do not follow prescribed treatment.  If you do not follow the

---

[3] http://www.alcoholics-anonymous.org/en_information_aa.cfm?PageID=10

prescribed treatment without a good reason, we will not find you disabled or blind
or, if you are already receiving benefits, we will stop paying you benefits.

20 C.F.R. § 416.930.  The record provides substantial evidence that Plaintiff has not followed

treatment prescribed by his physicians.  Plaintiff has not provided any reason for his non-

compliance, no less a good one.  Pursuant to 20 C.F.R. § 416.930, the ALJ correctly determined

that Plaintiff was not disabled.  Examining the evidence in the record as a whole, this Court finds

that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence.

### III.  CONCLUSION

For the reasons stated above, this Court finds that the Commissioner's decision is

supported by substantial evidence and is affirmed.


Dated: November 16, 2006

                   s/ Stanley R. Chesler          
                  STANLEY R. CHESLER, U.S.D.J.

14